UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jerry Wayne Smith,                                          Civil No. 05-1686 (JRT/FLN)

       Plaintiffs,

       v.                                                 **REPORT AND**
                                                           **RECOMMENDATION**

American Investors Network, Jim Shead,
Rob Rayford, Jr., Rick McNally, National
Investors Institute, Troy Shaw, Aaron Werlini,
and AXIS USA, Surety for American
Investors Network.

       Defendants.

_____

*Pro Se* Plaintiff.
Carol Casey for Defendants American Investors Network, Jim Shead,
Rob Rayford, Jr., Rick McNally
Kevin Swenson and Steven Aggergaard for National Investors Institute, Troy Shaw & Aaron
Werlini

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 23,

2006, on the motion of Defendants American Investors Network, Jim Shead, Rob Rayford, Jr., and

Rick McNally for summary judgment and on the Rule 12 motion to dismiss Axis U.S. Insurance.

[#38] Also before the Court was Defendants National Investors Institute, Troy Shaw & Aaron

Werlini's motion for summary judgment [#43]. These matters were referred to the undersigned for

Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

which follow, this Court recommends Defendants' Motions [#38] and [#43] be granted.

## I.    FINDINGS OF FACT

In his second amended complaint, filed on February 10, 2006,  Plaintiff Jerry Wayne Smith

(hereinafter "Smith") alleges claims for fraud, breach of contract, negligence and carelessness, gross

negligence, intentional infliction of emotional distress, deliberate indifference, and denial of due process.  (Second Am. Compl.)  Smith alleges that Defendants Jim Shead (hereinafter referred to as "Shead"), Rick McNally (hereinafter referred to as "McNally"), Troy Shaw (hereinafter referred to as "Shaw") and Aaron Werlini (hereinafter referred to as "Werlini") "were either founder, co-founders, employees, agent(s), representative(s), and/or independent contractors" for Defendant National Investors Institute (hereinafter referred to as "NII").  (Second Am. Compl. ¶2.)  Smith alleges that he is suing each Defendant "in his/her official and individual capacity" and that "[e]ach acts under color of law."  (Second Am. Compl. ¶2.)

Smith further alleges that Defendants Shead, McNally, and Rob Rayford. Jr. are "founders, co-founders, employees, agent, representative(s) and/or independent contractors" for Defendant American Investors Network (hereinafter referred to as "AIN").[1]  (Second Am. Compl. ¶3.)  Smith states that each of these Defendants is being sued in their individual and official capacity and that "[e]ach acts under color of law."  (Second Am. Compl. ¶3.)  Smith is also suing Defendant AXIS USA (hereinafter referred to as "AXIS"), because Smith claims that AXIS "is surety for Defendants AIN, Jim Shead, Rob Rayford, Jr., and Rick McNally."  (Second Am. Compl. ¶5.)  Smith is suing AXIS "in his official and individual capacity" and claims that "AXIS acts under color of law." (Second Am. Compl. ¶5.)

Defendant NII is a corporation that presents Real Estate Workshops throughout the United States.  (Second Am. Compl. ¶4.)  These workshops are designed to teach people how to achieve positive cash flow through real estate investments.  (Second Am. Compl. ¶4, attachment 1.)  Smith

---

[1] Shead and Rayford are the owners of AIN.  (See Defendant AIN's Mem. in Opp. at 1, n. 1.)  AIN is not affiliated with the real estate seminars conducted by NII.  (Affidavit of Troy Shaw (hereinafter "Shaw Aff.") ¶ 10.)

attended a Real Estate Workshop presented by NII on or about August 13, 2004, through August 16, 2004, in Minneapolis, Minnesota.   (Second Am. Compl. ¶6.)  Smith paid two thousand dollars to attend the four days of the seminar.[2]  Smith alleges that "NII, Shead [and] McNally advised Smith and all other participants attending the workshop that their investment in attending the workshop included unlimited guaranteed refresher courses at any future events, NII, Shead [and] McNally conducted throughout the Continental United States."  (Second Am. Compl. ¶7.)

During the four-day workshop that Smith attended he was told that, for an additional fee of one thousand dollars, he could purchase the Referral Package.  (Erstad Aff. Ex. 3 at 35-36.)  Smith alleges that he was told that if he purchased the Referral Package he would be assigned a coach at the four-day workshop to work with him "one-on-one to make [his] first deal happen."  (Erstad Aff. Ex. 3 at 22.)  Smith alleges that

> [t]he coaching component was not introduced by NII, Shead [and] McNally until the fourth . . . day of the workshop.  During this period Shead advised Smith and all other participants of the workshop that each participant who signed up and paid the coaching fee w[ould] be assigned a personal experienced coach who w[ould] work with participants to strengthen and assist them in consummating their first real estate deal in the St. Paul/Minneapolis area.

(Second Am. Compl., n. 1.)  Smith purchased the Referral Package but alleges that "McNally refused to provide Smith with a copy of the contract for coaching after charging Smith's credit card for payment."  (Second Am. Compl., n. 1; Erstad Aff. Ex. 3 at 23.)

Smith testified that Shead assigned McNally to be Smith's coach to assist Smith in consummating his first real estate deal.  (Erstad Aff. Ex. 3 at 23-24.)  Smith testified that McNally

---

[2] In his affidavit, Troy Shaw states that Smith "paid $2,000.00 to attend a [NII] three-day seminar," however, it is clear from the record that Smith attended a four day seminar that spanned from August 13, 2004, through August 16, 2004.  (See Amend. Compl., attachment 2.)

"explained the process . . . what's involved, what [Smith] ha[d] to do, what [McNally] ha[d] to do

to make the first deal happen."  (Erstad Aff. Ex. 3 at 24.)  Smith testified that McNally told him that

McNally "was going to hone the first deal himself, and that [Smith] was going to watch [McNally]

do the process."  (Erstad Aff. Ex. 3 at 24.)

Smith further alleges that he located his first real estate deal by looking in the Star Tribune

classified advertisements.  Smith contends that he "brought this information to McNally's attention

and requested McNally's assistance in consummating [his] first deal."  (Second Am. Compl., n. 2.)

Smith further contends that "McNally advised Smith he w[ould] make this happen" and that

"McNally then phone[d] the seller of the property, made an offer, faxed said offer to seller, advised

Smith that McNally would ensure 5,000.00 down payment, and wait for seller to fax their response."

(Second Am. Compl., n. 2; Erstad Aff. Ex. 3 at 25-28.)  Smith alleges that he requested that McNally

provide him with a copy of the offer McNally faxed to the seller, and that McNally agreed to do so

but ultimately "failed to provide this information to Smith."  (Second Am. Compl., n. 2; Erstad Aff.

Ex. 3 at 26.)

Smith testified that "McNally had the last contact with the seller.  And what he told me at

that time was that he was going to be leaving town, and that he was going to fax me a copy of the

contract when he got to Miami."  (Erstad Aff. Ex. 3 at 29.)  Smith testified that he spoke with

McNally "two or three times on the telephone" after the seminar concluded, but that McNally never

faxed Smith the contract for the real estate deal.  (Erstad Aff. Ex. 3 at 29-31.)  Smith alleges that

McNally "left town and abandoned Smith with no other assistance whatsoever" which lead to

Smith's failure to consummate the real estate deal.  (Second Am. Compl., n. 2.)  Smith contends that

he did not receive any coaching from NII, Shaw, Werlini, Shead or McNally, and that he filed

several complaints with NII, Shaw and Werlini concerning "the fraudulent [activities] of Shead and McNally." (Second Am. Compl. ¶10.)   Smith testified that in February or March, 2005, he requested a refund of the seminar fee from NII and received $1,100.00 from NII as a partial refund. (Erstad Aff. Ex. 3 at 34-35.) Smith testified that he spoke with Shaw, Werlini, and a third unknown person at NII regarding his refund. (Erstad Aff. Ex. 3 at 36.) Smith testified that Mr. Shaw agreed to partially refund Smith's seminar fee if Smith would return the seminar materials. (Erstad Aff. Ex. 3 at 38.) Smith did so and was refunded $1,100.00. (Erstad Aff. Ex. 3 at 39.) Shaw testified that Smith cancelled the "Referral Package" after the thirty day deadline for cancellation, but that "[e]xcepting its strict cancellation policy, [NII] approved a full refund of $1,000.00 for the value of the 'Referral Package'" and an additional "$100.00 to cover various fees and other expenses." (Shaw Aff.¶¶ 7-8.) Shaw testified that Smith "agreed that $1,100.00 was a full and fair refund for the amount paid to [NII]." (Shaw Aff. ¶ 9.)

During his deposition Smith was asked "what is it about the dealings with Mr. Shaw that you believe to be fraudulent" and Smith responded: "Mr. Shead and Mr. McNally made representations at the seminars to me and others about consummating the first deal, and they used me as an example at the seminar to make that happen, and it didn't happen." (Erstad Aff. Ex 3 at 41-42.) Smith was asked if there was anything else that Shaw did that, in his opinion, was fraudulent, and Smith replied "[w]ell, the misrepresentations that was made to me through his agents are connected to him." (Erstad Aff. Ex. 3 at 43.) Smith testified that Shaw "did not return [his] full money." (Erstad Aff. Ex. 3 at 43.) Smith testified that his claims of fraud against Werlini are based on the same facts as his claim against Shaw. (Erstad Aff. Ex. 3 at 44-45.)

Sometime in February, 2005, Shead and Rob Rayford, Jr., formed AIN. AIN presents Real

Estate Seminars to teach real estate investment skills.  McNally began working for AIN as an independent contractor.  On July 5, 2005, Smith alleges that he "received an invitation from Shead to attend AIN's seminar that was scheduled to be conducted in the Bloomington, Brooklyn Center, and St. Paul, Minnesota area."  (Second Am. Compl. ¶11.)  Smith contends that, on July 13, 2005, he attended AIN's Brooklyn Park seminar.  (Second Am. Compl. ¶12.) Smith testified that he spoke with Shead at this seminar, and that Shead "made an announcement to the other candidates at the seminar about me being at the NII seminar in '04, and that they had used me as making the first deal at that seminar."  (Erstad Aff. Ex. 3 at 53.)  Smith testified that he did not tell Shead at that time that he was going to attend the guaranteed refresher course; rather, Smith testified that Shead "made an announcement to the audience" that Smith was going to attend the guaranteed refresher course. (Erstad Aff. Ex. 3 at 54.)  Smith testified that Shead said that Smith "was one of [Shead's] students in NII. . . . and that they used me as a model to make my first deal with that seminar, and . . . I was . . . taking a refresher course because that was one of the guarantees that NII made to me when I attended the first seminar."  (Erstad Aff. Ex. 3 at 84.)  However, in his second amended complaint Smith alleges that he "spoke with Shead and advised Shead that Smith was attending the guaranteed refresher course that Shead advised Smith about when Smith attended NII's workshop on August 13-16, 2004."  (Second Am. Compl. ¶12.)  Smith alleges that Shead gave him the refresher course materials and told Smith to attend a workshop in Bloomington, Minnesota on August 5, 2005, through August 8, 2005.  (Second Am. Compl. ¶12.)

On August 5, 2005, Smith arrived at the AIN workshop in Bloomington, Minnesota.  Upon arriving "Smith accosted the registration desk at AIN's workshop and saw McNally running the affair."  (Second Am. Compl. ¶14.)  Smith states that he signed in at the registration desk and that

6

McNally approached him, whereupon Smith "advised McNally that he was a liar, had defrauded Smith and Smith did not want to deal with or talk to McNally." (Second Am. Compl. ¶14.)  Smith alleges that he then went into the workshop and sat down, and was thereafter  "accosted by Alex Ray, employer/agent for AIN, [who] . . .advised Smith he had to have his picture taken." (Second Am. Compl. ¶14.)  Smith refused, and Mr. Ray reported this to McNally, who "accosted Smith and advised Smith that if his picture [was not] . . . taken, Smith [could] not attend the workshop." (Second Am. Compl. ¶14.) Smith responded by stating that "he had an absolute guarantee by Shead that Smith could attend any workshops put on by Shead free of charge and as many times as [he] desired." (Second Am. Compl. ¶14.)  Smith alleges that McNally then directed Mr. Ray to retrieve Smith's personal belongings from the seminar room where Smith was seated and return those belongings to Smith.  After Smith's personal items were returned McNally directed Smith to leave and told Smith he would not be permitted to attend the workshop. (Second Am. Compl. ¶14.) Smith refused to leave and McNally called security to remove him from the premises.  (Second Am. Compl. ¶14.)  Smith was then escorted from the premises and prevented from attending or participating in any of the workshop activities.  (Second Am. Compl. ¶14.)

Smith was asked whether he paid "anything to attend this seminar with AIN" and he responded that he paid his initial investment, which was paid to NII.  (Erstad Aff. Ex. 3 at 62.) When asked in what way he had been damaged as a result of the causes of action he alleges against Defendants, Smith replied "[w]ell, my initial investment, my time . . . the future potentials of being able to be in this business and be good at it.  I lost the prospects of that based on the admissions that were made to me that wasn't taken care of, and I feel that I've been through a lot of tremendous mental anguish and stress concerning this situation." (Erstad Aff. Ex. 3 at 64-65.)  Smith testified

that he did not make any real estate purchases for investment either previous to or after attending

the NII seminar in August, 2004.  (Erstad Aff. Ex. 3 at 65.)  Smith testified that he suffers from

"major depression" and that his problems with NII and AIN have "escalated" his depression "in a

lot of ways, caus[ing him] to have [his] medications changed a lot."  (Erstad Aff. Ex. 3 at 67-68.)

 Smith testified that his problems with NII and AIN have caused him "a couple of times to have to

see [his] doctors concerning this."  (Erstad Aff. Ex. 3 at 68.)  Smith testified that, while the types

of medications that he is prescribed have not changed since August 2004, the dosages have changed.

(Erstad Aff. Ex. 3 at 71.)  Smith testified that he was hospitalized in September, 2004, for two days

for complications resulting from his depression.  (Erstad Aff. Ex. 3 at 72.)  Smith testified that he

was hospitalized for nineteen days in December, 2005, and January, 2006, for his depression.

(Erstad Aff. Ex. 3 at 72.)  Smith testified he also sees a psychologist for his depression, and has done

so for several years.  (Erstad Aff. Ex. 3 at 74-75.)

>        Based on the foregoing events, Smith alleges that

>    said promise of defendants to provide Smith with coaching and failing to timely do
>    so, failing to provide Smith with a copy of the coaching contract when Smith
>    tendered payment, failing to provide Smith with a copy of the faxed offer to seller
>    on Smith's 'first deal,' failing to follow through on said first deal, completely
>    abandoning Smith and preventing Smith from attending, participating and benefitting
>    from the promised guaranteed 'refresher course' was a result of fraud of defendants
>    AIN, NII, Shead, McNally, Troy [Shaw], Rayford, and [Aaron Werlini].

(Second Am. Compl. ¶16.)  Smith further alleges that Defendants' refusal to "timely provide Smith

with coaching, as agreed upon and which Smith made payment for, breached a legal duty owed to

Smith as a results [sic] of gross negligence, negligence and carelessness, intentional infliction of

emotional distress, deliberate indifference[3] and denial of due process[4] of defendants NII, Shead, Troy [Shaw] and Erin [Werlini]."[5]  (Second Am. Compl. ¶17.)  Finally, Smith alleges that he "sustained severe and permanent injuries in mind and body incurring loss of investment for payment of workshop, coaching, wages and wage-earning ability all of which problems are continuing in nature resulting from damages to him in excess of $250,000.00."  (Second Am. Compl. ¶18.)  Smith demands a judgment against Defendants in excess of two million dollars.

Defendants American Investors Network, Jim Shead, Rob Rayford, Jr. and Rick McNally now move for summary judgment and also move for a Rule 12 Motion to Dismiss on behalf of Axis U.S. Insurance [#38].  Similarly, Defendants National Investors Institute, Troy Shaw & Aaron Werlini also move for summary judgment [#43].  Prior to the hearing on these matters, Smith responded to these motions by notifying the Court that he intended to offer testimony at the hearing from witnesses that had information to support the claims in this lawsuit.  Prior to the hearing Smith also filed a motion for forthwith order directing the U.S. Marshal to serve plaintiff's subpoenas.  (See Docket Number 66.)  After the hearing on these matters, the Court decided to treat Plaintiff's

---

[3] The Court is unclear what cause of action Plaintiff is attempting to identify by stating that Defendants acted with "deliberate indifference."  The Court is unaware of any such civil cause of action that would be applicable to the facts in the present case.

[4] The United States Supreme Court has long held that "the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."  Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982).  Therefore, Smith does not have a claim for "denial of due process" against NII, Shaw, Werlini and Shead, because NII is a private entity and the other Defendants are private persons.

[5] Although Defendant AIN, in its memorandum in support of its motion for summary judgment, argues that it is not liable to Smith for claims of negligence, gross negligence and intentional infliction of emotional distress, Smith has only alleged claims for breach of contract and fraud against AIN.  (See Second Amend. Compl. ¶¶ 16-17.)  Therefore, the Court will only address Smith's breach of contract claim and fraud claims as against AIN.

motion as a request pursuant to Fed. R. Civ. P. 56(f), and granted Plaintiff a continuance until August 1, 2006, to conduct any discovery necessary for Plaintiff to respond to Defendants' motions. The Court also granted Plaintiff a continuance until August 15, 2006, to respond to Defendants' motions. (See Docket Number 68.)

Thereafter Plaintiff made a motion for an order extending the August 1, 2006, deadline for the completion of discovery. (See Docket Number 74.) The Court denied Plaintiff's motion and ordered Plaintiff to respond to Defendants' motions for summary judgment by September 15, 2006. (See Docket Number 81.) On August 18, 2006, Plaintiff filed a motion to compel Defendants' to comply with discovery requests and a motion for sanctions. (Docket Number 82.) On September 11, 2006, this Court denied Plaintiff's motion to compel Defendants' to comply with discovery requests and a motion for sanctions, stating that "[a] review of the Defendants' responses to Plaintiff's discovery requests demonstrated that the dispute underlying the . . . motion would have been appropriate for a meet and confer to resolve the issue." (Docket Number 95.) On September 15, 2006, Plaintiff did not file a response to Defendants' motions; rather, Plaintiff filed an objection to this Court's order denying his motion to compel and his motion for sanctions, and also requested a stay of the proceedings. (See Docket Numbers 95 and 97.)

On September 25, 2006, Plaintiff filed another objection to this Court's order denying his motion to compel and his motion for sanctions, and requested a stay of the proceedings. (See Docket Numbers 95, 101 and 102.) In his objection, Smith stated that he was unable to properly respond to Defendants' motions for summary judgment "due to defendants' refusal to provide Smith with complete discovery materials which are needed in order to refute material allegations made by defendants in the case." (Docket Number 102 at 3.) Smith alleges that he has not had adequate time

10

to conduct discovery in this matter and, therefore, the Court should postpone its decision on Defendants' motions for summary judgment until Plaintiff has been provided the opportunity to complete adequate discovery.  (Docket Number 102 at 3.)

Plaintiff has never filed a substantive response to Defendants' motions.  This Court has given Plaintiff ample time to reply to Defendants' motions for summary judgment and Plaintiff has failed to do so.  A stay of proceedings has not been issued in the present case; therefore, the Court will proceed to decide Defendants' motions for summary judgment on the submissions currently before the Court.

## II.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs" the determination of whether a certain fact is material.  Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the

benefit of all reasonable inferences that can be drawn from those facts.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.P. 56(e); <u>see</u> <u>Anderson</u>, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")  An entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322.

## III.   LEGAL ANALYSIS

A.   **Defendants National Investor Institute, Troy Shaw, and Aaron Werlini's Motion for Summary Judgment Should be Granted.**

1.   **There is no genuine issue of material fact concerning Plaintiff's breach of contract claim.[6]**

To state a claim for breach of contract, Plaintiff must show "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages."  Parkhill v. Minn. Mut. Life Ins. Co., 174 F.Supp. 2d 951, 961 (D.Minn.2000) (citing Briggs Trans. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (1970); Boatwright Construction, Inc. v. Kemrich Knolls, 238 N.W.2d 606, 607 (1976); Beck v. Lazard Freres & Co., 175 F.3d 913, 914 (11th Cir.1999)).  Defendants concede that a contract existed between Smith and Defendant NII.  (Defendant NII's Mem. at 4.)  However, Plaintiff's breach of contract claim against NII fails in two respects.  First, there is no genuine issue of material fact as to whether NII has materially breached that contract.  The parties entered into a contract on August 13, 2004.  Under the terms of the contract, Smith paid NII two thousand dollars and, in exchange, NII permitted Smith to attend NII's seminar on August 13, 2004, through August 16, 2004.  Smith attended each day of the four day seminar for which he paid two thousand dollars; therefore, NII performed its obligations under the contract.  The term "material breach" "generally means the failure to perform an

---

[6]  The caption on Smith's Second Amended Complaint states "Civil Complaint for Fraud, Breach of Contract, Gross Negligence, Negligence & Carelessness, Intentional Infliction of Emotional Distress, Deliberate Indifference."  (Second Amend. Compl. at 1.)  However, in the body of the complaint, Smith never explicitly states a claim for breach of contract against any of the Defendants.  Although Smith never explicitly states a claim for breach of contract against any of the Defendants, the Court will assume such a claim has been asserted and will address Smith's claim for breach of contract against both NII and AIN.

obligation required by the contract which is central to the achievement of the purpose of the contract." Bolander v. Bolander, 703 N.W.2d 529, 543 (Minn.Ct.App. 2005). Plaintiff paid a set amount to NII in exchange for the classes taught at the seminar, and he attended the entire seminar. The lessons taught at the seminar were the "obligation required by the contract which [were] central to the achievement of the purpose of the contract." Id. Therefore, no material breach occurred.

The second reason that Plaintiff's breach of contract claim fails is that Plaintiff has failed to show that any damages resulted from any alleged breach. While it is arguable whether NII performed its obligations under the contract concerning the Referral Package, NII refunded Plaintiff the entire amount of money Plaintiff paid for the Referral Package. Therefore, Plaintiff was restored to the situation that he was in prior to signing the contract for the Referral Package and Plaintiff cannot show that he suffered any damages as a result of any alleged breach of the Referral Package contract.

Plaintiff claims he has been damaged by loss of future profits. (Erstad Aff. Ex. 3 at 64-66.) The Minnesota Supreme Court noted that

> The general rule in Minnesota is that damages in the form of lost profits may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness. This means that the nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts. * * * This rule does not call for absolute certainty.

Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 266 (Minn.1980) (omission in original) (quoting Appliances, Inc. v. Queen Stove Works, Inc., 36 N.W.2d 121, 125 (1949) (quotations omitted)). In the present case, Smith cannot show the amount of his lost profits "with a reasonable degree of certainty and exactness," therefore, his claim for breach of contract must fail.

Smith also alleges that he incurred damages of "loss of investment for payment of workshop." (Second. Amend. Compl. ¶ 18.)  However, as explained above, Smith was provided with all of the benefits of the four day seminar in exchange for his payment of two thousand dollars; therefore, he did not lose his investment in the workshop.  In addition, Smith was refunded his money for the Referral Package; therefore, he did not lose his investment in the Referral Package because his investment money was returned to him in the form of a refund from NII.  Plaintiff has failed to show that any damages resulted from the alleged breach of contract, and the Court recommends that his breach of contract claim be dismissed.

### 2.     There is no genuine issue of material fact concerning Plaintiff's negligence claims against NII, Shaw and Werlini.

"In a claim for negligence, a plaintiff must prove: (1) the defendant has a legal duty to the plaintiff to take some action; (2) there was a breach of that duty; (3) the breach of the duty was the proximate cause of the harm to the plaintiff; and (4) damage." Gilbertson v. Leninger, 599 N.W.2d 127, 130 (Minn.1999).  The Minnesota Supreme Court held that "[t]he existence of a legal duty to act depends on two factors: (1) the relationship of the parties, and (2) the foreseeability of the risk involved." Id. (citing Erickson v. Curtis Inv. Co., 447 N.W.2d 165, 168-69 (Minn.1989)).  In the present case, NII and Smith had a contractual relationship wherein Plaintiff agreed to pay two thousand dollars and Defendants agreed to provide Plaintiff with a seminar concerning real estate investment lessons.  These services were provided to Plaintiff.  Defendants do not owe Plaintiff any legal duty.  As Defendants do not owe Plaintiff a legal duty, there is no legal duty upon which to base a claim for negligence.  Therefore, the Court recommends that Defendants' Motion for Summary Judgment be granted insofar as it relates to Plaintiff's claims for negligence and gross

negligence[7] against Defendants NII, Shaw and Werlini.

**3.** **There is no genuine issue of material fact concerning Plaintiff's fraud claim against NII, Shaw and Werlini.**

To state a claim of fraud pursuant to Minnesota law, Plaintiff must prove the following

elements:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn.1986). Federal Rule of Civil

Procedure Rule 9(b) states that "[i]n all averments of fraud . . . the circumstances constituting fraud

. . . shall be stated with particularity." Fed. R. Civ. P.9(b). In his complaint Plaintiff states that

> said promise of defendants to provide Smith with coaching and failing to timely do so, failing to provide Smith with a copy of the coaching contract when Smith tendered payment, failing to provide Smith with a copy of the faxed offer to seller on Smith's 'first deal,' failing to follow through on said first deal, completely abandoning Smith and preventing Smith from attending, participating and benefitting from the promised guaranteed 'refresher course' was a result of fraud of defendants AIN, NII, Shead, McNally, Troy [Shaw], Rayford, and Erin [Werlini].

(Second Am. Compl. ¶16.) In the present case, Plaintiff's claims of fraud are not stated with

particularity in his complaint, as required by Federal Rule of Civil Procedure Rule 9(b). Therefore,

the Court recommends that Defendants' motion for summary judgment be granted.

**4.** **There is no genuine issue of material fact concerning Plaintiff's claim for intentional infliction of emotional distress against Defendants NII, Shaw and Werlini.**

---

[7] Smith cannot prove that a legal duty exists to support a claim for ordinary negligence; likewise, he cannot prove that a legal duty exists to support a claim for gross negligence.

To prevail on a claim for intentional infliction of emotional distress, Plaintiff must prove the following four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Hubbard v. United Press International, Inc., 330 N.W.2d, 428, 438-39 (Minn.1983). "[T]he type of actionable conduct referred to . . . as 'extreme and outrageous' must be 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" Id. at 439 (quoting Haagenson v. National Farmers Union Property and Casualty Co., 277 N.W.2d 648, 652 n. 3 (Minn.1979) (citing Restatement (Second) of Torts § 46 comment d (1965))).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there is nothing in these facts that rises to the level of establishing even a prima facie case for intentional infliction of emotional distress. There is no conduct described in the facts of the present case that rises to the level of "extreme and outrageous" conduct. Therefore, the Court recommends that Defendant NII, Werlini and Shaw's motion for summary judgment be granted, and that the claims against NII, Shaw and Werlini be dismissed in their entirety.

## B.    Defendant Axis U.S. Insurance's Rule 12 Motion to Dismiss Should be Granted.

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A cause of action should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002) (citations omitted). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. See Turner v. Holbrook, 278 F.3d

754, 757 (8th Cir. 2002).  For the purpose of a motion to dismiss, facts in the complaint are assumed

to be true.  <u>In re Navarre Corp. Sec. Litig.</u>, 299 F.3d 735, 738 (8th Cir.2002).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally

flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary

pretrial and trial activity.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-327 (1989).  To avoid dismissal,

a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal

conclusions.  <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir.1998).

*Pro se* pleadings should be liberally construed, and are held to a less stringent standard when

challenged by motions to dismiss.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Horsey v.</u>

<u>Asher</u>, 714 F.2d 209, 211 n. 3 (8th Cir. 1984) Although it is to be liberally construed, a *pro se*

complaint must still contain specific facts to support its conclusions.

In the present case, Plaintiff has failed to state a cause of action against AXIS.  The

Minnesota Supreme Court held that "[i]t is established in this state that an injured person possesses

no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment against

the latter."  <u>Miller v. Market Men's Mutual Ins. Co.</u>, 115 N.W.2d 266, 268 (Minn.1962).  Therefore,

Smith must first obtain a judgment against AIN before he can recover from AXIS.  Since Plaintiff

has not obtained a judgment against AIN, Plaintiff's complaint fails to state a claim upon which

relief may be granted as to AXIS, and the Court recommends that Defendant's motion to dismiss

pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) be granted.

### C.    Defendants American Investors Network, Jim Shead, Rob Rayford, Jr., and Rick McNally's Motion for Summary Judgment Should be Granted.

Smith's contact with AIN is extremely limited.  The total contact that Smith had with AIN

consists of the conversation Smith had with Shead on July 13, 2005, when Smith spoke with Shead

at AIN's Brooklyn Park seminar, and Smith's short attendance at AIN's Bloomington, Minnesota,

seminar on August 5, 2005.  The remaining allegations in the complaint relate to Smith's dealings

with NII and occurred prior to the formation of AIN.

> **1.     There is no genuine issue of material fact concerning Smith's fraud claim against AIN, Shead, Rayford, and McNally.**

In his second amended complaint, Smith alleges that

> said promise of defendants to provide Smith with coaching and failing to timely do so, failing to provide Smith with a copy of the coaching contract when Smith tendered payment, failing to provide Smith with a copy of the faxed offer to seller on Smith's 'first deal,' failing to follow through on said first deal, completely abandoning Smith and preventing Smith from attending, participating and benefitting from the promised guaranteed 'refresher course' was a result of fraud of defendants AIN, NII, Shead, McNally, Troy [Shaw], Rayford, and Erin [Werlini].

(Second Am. Compl. ¶16.)  As noted above, to allege a cause of action for fraud, Plaintiff must

prove the following elements:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

Specialized Tours, Inc. v. Hagen, 392 N.W.2d at 532.  Federal Rule of Civil Procedure Rule 9(b)

states that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated

with particularity."  Fed. R. Civ. P.9(b).  In the present case, Plaintiff's claims of fraud are not stated

with particularity in his complaint, as required by Federal Rule of Civil Procedure Rule 9(b).

Therefore, the Court recommends that Defendants' motion for summary judgment be granted with

respect to Plaintiff's claim of fraud.

**2.      There is no genuine issue of material fact to support Smith's claim of breach of contract against AIN.**

Insofar as Smith's second amended complaint seeks to assert a breach of contract claim against AIN, there is no genuine issue of material fact to support such a claim. As noted above, the first element in a breach of contract claim requires the Plaintiff to prove that a contract was formed between the parties. In the present case there is no genuine issue of material fact as to whether a contract was formed between AIN and Smith. The only contact that AIN had with Smith was the conversation Smith had with Shead on July 13, 2005, when Smith spoke with Shead at AIN's Brooklyn Park seminar, and Smith's short attendance at AIN's Bloomington, Minnesota, seminar on August 5, 2005. Neither one of these contacts resulted in the formation of a contract between Smith and AIN, and Smith has provided no evidence in support of his claim of breach of contract against AIN. Therefore, to the extent Smith is alleging a claim for breach of contract against AIN, the Court recommends that AIN's motion for summary judgment be granted.

**3.      There is no genuine issue of material fact to support Smith's negligence claims against Shead.**

As noted above, "[i]n a claim for negligence, a plaintiff must prove: (1) the defendant has a legal duty to the plaintiff to take some action; (2) there was a breach of that duty; (3) the breach of the duty was the proximate cause of the harm to the plaintiff; and (4) damage." Gilbertson v. Leninger, 599 N.W.2d 127, 130 (Minn.1999). In the present case, Plaintiff has not established that Shead owed Plaintiff a legal duty. As Shead does not owe Plaintiff a legal duty, there is no legal duty upon which to base a claim for negligence. Therefore, the Court recommends that Defendants' Motion for Summary Judgment be granted insofar as it relates to Plaintiff's claims for negligence

and gross negligence[8] against Shead.

**4.     There is no genuine issue of material fact to support Smith's intentional infliction of emotional distress claim against Shead.**

As noted previously, to prevail on a claim for intentional infliction of emotional distress, Plaintiff must prove the following four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  Hubbard v. United Press International, Inc., 330 N.W.2d, 428, 438-39 (Minn.1983).  There is no conduct in the facts of the present case that rises to the level of "extreme and outrageous" conduct.  Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there is nothing in these facts that rises to the level of establishing even a prima facie case for intentional infliction of emotional distress.  Therefore, the Court recommends that Defendant AIN, Shead, Rayford, and McNally's motion for summary judgment be granted, and that the claims against AIN, Shead, Rayford, and McNally be dismissed in their entirety.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants American Investors Network, Jim Shead, Rob Rayford, Jr., and Rick McNally's motion for summary judgment and Rule 12 motion to dismiss Axis U.S. Insurance [#38] be **GRANTED** and that Defendants National Investors Institute, Troy Shaw & Aaron Werlini's motion for summary judgment [#43] be **GRANTED**.

---

[8] Smith cannot prove that a legal duty exists to support a claim for ordinary negligence; likewise, he cannot prove that a legal duty exists to support a claim for gross negligence.

21

DATED: October 26, 2006                                    s/ *Franklin L. Noel*
                                                           FRANKLIN L. NOEL
                                                           United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 15, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 15, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.